UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TRAVIS T.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

CASE NO. C21-5907-BAT

**ORDER REVERSING AND REMANDING**

Plaintiff seeks review of the denial of his application for Supplemental Security Income. He contends the ALJ erred in failing to consider his learning disorder at step two, assessing the State agency opinions, and discounting his allegations. Dkt. 14 at 1-2. For the reasons below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the case for further proceedings under 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff is currently 48 years old, has a high school diploma, and has worked as a retail stocker. Tr. 285. In December 2018, he applied for benefits, alleging disability as of November 10, 2018. Tr. 269-74. His application was denied initially and on reconsideration. Tr. 199-202, 211-17. The ALJ conducted a hearing in November 2020 (Tr. 34-54), and subsequently found

ORDER REVERSING AND REMANDING - 1

Plaintiff not disabled. Tr. 18-30. As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1-7.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process, [1] the ALJ found:

**Step one:** Plaintiff has not engaged in substantial gainful activity since the application date.

**Step two:** Plaintiff has the following severe impairments: degenerative disc disease, obesity, osteoarthritis, hearing loss, bipolar disorder, and personality disorder.

**Step three:** These impairments did not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity ("RFC"):** Plaintiff can perform sedentary work with additional limitations: he can lift/carry 10 pounds occasionally and less than 10 pounds frequently. He can stand/walk for two hours in an eight-hour workday and can sit for about six hours. He can frequently climb ramps and stairs, but only occasionally climb ladders, ropes, and scaffolds. He can frequently stoop, kneel, crouch, and crawl. He should work in an environment with no more than moderate noise levels. He should perform tasks that require no more than occasional use of a telephone. He can understand, remember, and carry out simple routine instructions with only occasional changes in the work setting. Goals would need to be set by others. He can have brief and superficial interactions, on an occasional basis, with supervisors, co-workers, and the public.

**Step four:** Plaintiff has no past work.

**Step five:** As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, he is not disabled.

Tr. 18-30.

## DISCUSSION

**A.    Step Two**

Plaintiff contends the ALJ erred in failing to consider his learning disorder at step two,

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

ORDER REVERSING AND REMANDING - 2

although he acknowledges there is no such diagnosis in the record. Dkt. 18 at 8. Plaintiff argues the ALJ should have developed the record with regard to his learning deficits because the record suggests he had problems learning and was unable to manage money. *Id*. (citing Tr. 174, 450-53).

Plaintiff has not shown the ALJ's duty to develop was triggered by an incomplete or ambiguous record. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry." (cleaned up)). Plaintiff did not describe any learning difficulties at the hearing, and did not list a learning disorder as one of his conditions in his application materials. *See* Tr. 284. Plaintiff relies on *Tonapetyan* to argue an ALJ must develop the record regarding *possible* mental impairments; this case is distinguishable. In *Tonapetyan*, a medical expert provided equivocal testimony as to the existence of the claimant's impairments and indicated his equivocation was due to an incomplete record. 242 F.3d at 1150-51. The Ninth Circuit held the ALJ erred in relying on the medical expert's testimony without acknowledging it was equivocal due to an incomplete record, and the ALJ needed to further develop the record to determine the existence and nature of the claimant's mental impairments. *Id*.

But in this case, there is a dearth of evidence establishing Plaintiff has a learning disorder or his learning deficits are not accounted for in the ALJ's decision. *See, e.g.*, Tr. 22 (the ALJ's step-three finding Plaintiff has moderate limits in understanding, remembering, or applying information, and moderate limits in his ability to adapt and manage himself), 23 (RFC assessment limiting Plaintiff to performing routine instructions with occasional work changes; no goal-setting; and brief, superficial, occasional social interaction). Plaintiff has neither shown the

ORDER REVERSING AND REMANDING - 3

evidence warranted further development or that the ALJ overlooked any particular learning deficits. That the record lacks evidence regarding learning disability does not trigger the ALJ's duty to develop or find that evidence. Accordingly, Plaintiff has failed to show the ALJ harmfully erred at step two. *See Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017) (finding harmless any step-two errors where the ALJ moves beyond step two in the sequential evaluation and accounts for limitations in the RFC).

To the extent Plaintiff argues the ALJ's step-two error was harmful because it resulted in an incomplete assessment of his capabilities at step three and in the RFC assessment, Plaintiff has not shown the ALJ ignored any particular evidence. Although Plaintiff contends the ALJ ignored Plaintiff's processing difficulties, problems performing calculations, and problems using public transportation throughout the decision (Dkt. 14 at 7), the ALJ's decision references to many such deficits and finds they cause significant, but not disabling, limitations. Tr. 22 (referencing Plaintiff's problems with remembering to take medication, handling self-care, and going places; and Plaintiff's inability to cook or clean), 23 (ALJ's RFC assessment referencing cognitive, concentration, social, and adaptation limitations). Although Plaintiff posits his limitations are disabling, he has failed to show that the ALJ's identification of significant but not disabling limitations is unreasonable or unsupported by substantial evidence, and thus has not shown error in this aspect of the ALJ's decision.

**B.     Medical Opinions**

In *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022), the Ninth Circuit held that the regulations governing applications filed after March 27, 2017, supplant the hierarchy governing the weight an ALJ must give medical opinions and the requirement the ALJ provide specific and legitimate reasons to reject a treating doctor's opinion. Under the new regulations, the ALJ

ORDER REVERSING AND REMANDING - 4

considers the persuasiveness of the medical opinion using five factors (supportability, consistency, relationship with claimant, specialization, and other), with supportability and consistency being the two most important factors. 20 C.F.R. §§ 404.1520c(b)(2), (c); 416.920c(b)(2), (c). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant ... objective medical evidence." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Consistency means the extent to which a medical opinion is "consistent ... with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The agency must "articulate ... how persuasive" it finds "all of the medical opinions" from each doctor or other source, 20 C.F.R. §§ 404.1520c(b), 416.920c(b), and must explain how the ALJ considered the factors of supportability and consistency, 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). An ALJ cannot reject a doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. *Woods*, 32 F.4th 792.

In this case, Plaintiff challenges the ALJ's finding the State agency medical and psychological opinions were mostly persuasive. Tr. 28. Specifically, Plaintiff argues the ALJ erred in crediting stale medical opinions that were provided before Plaintiff's August 2019 MRI, clarified his condition. Dkt. 14 at 10. Plaintiff contends the ALJ erroneously suggested the State agency medical opinions were consistent with "workup findings" because the opinions were uninformed by the MRI indicating epidural lipomatosis. *See* Tr. 475-76. Plaintiff fails to show the timing of the State agency review vis-a-vis the MRI undermines the conclusions of the State agency consultants, however, because the MRI is not inconsistent with the State agency medical opinions. The MRI report does not describe any particular functional limitations, and the State agency consultants referred to Plaintiff's functional testing, examination findings, and subjective

ORDER REVERSING AND REMANDING - 5

1    allegations. *See* Tr. 177-78, 190-94. Because Plaintiff has not shown the MRI report

2    contradicted the State agency medical opinions, Plaintiff has failed to show the ALJ's

3    consistency finding is unreasonable or is not supported by substantial evidence.

4        Plaintiff also challenges the ALJ's assessment of the State agency psychological

5    opinions. *See* Tr. 28. The ALJ acknowledged the State agency consultants opined Plaintiff

6    would "benefit" from additional time and training when adjusting to workplace changes, but

7    found "a limitation to occasional changes in the work setting rather than additional time and

8    training sufficiently accommodates the claimant in performing simple tasks." *Id*.

9        Plaintiff contends the ALJ erred. Dkt. 14 at 11. The Commissioner suggests Plaintiff's

10   need for "additional time and training" is a recommendation, not a limitation, and the ALJ in any

11   event reasonably accounted for this need by limiting Plaintiff to work involving occasional

12   change in the work setting. The former argument is not supported by the record. The ALJ did not

13   reject the need for additional time and training on the grounds it was not a limitation and just a

14   suggestion, just as the ALJ incorporated rather than rejecting the doctors' opinions Plaintiff

15   "would likely function best with limited contact with coworkers." *See* RFC and Tr. 180.

16       Rather than rejecting the need for additional time and training, the ALJ accepted it but

17   found the limitation is met if Plaintiff was limited to working involving occasional change in the

18   work setting. This finding is not supported by the substantial evidence. The agency doctors

19   opined Plaintiff was "moderately limited" in his ability to respond appropriately to changes in the

20   work setting. Tr. 180. The doctors provided a narrative explanation regarding this limitation

21   setting forth two different issues: First Plaintiff "would benefit from additional time and training

22   when adjusting to changes, and second that Plaintiff can "adjust to modest change and work

23   towards goals set by others." *Id.* The RFC determination deviates from these medical opinions.

ORDER REVERSING AND REMANDING - 6

The RFC sets a frequency limit on changes in the workplace ("occasional" changes). The medical opinions limit Plaintiff to "modest" changes, indicating small changes, not "occasional changes," and that Plaintiff would function best with further training and additional time, which is also a limitation that is not accounted for by the RFC. The ALJ accordingly must on remand reassess the opinions and RFC as needed.

**C.     Plaintiff's Testimony**

The ALJ discounted Plaintiff's testimony on the grounds (1) the objective evidence does not corroborate limitations as severe as Plaintiff described; (2) Plaintiff's back and hip pain improved with conservative, minimal treatment; (3) Plaintiff's depression improved with medication; (4) Plaintiff's mental conditions have a situational component related to family dynamics and grief; (5) Plaintiff made inconsistent statements about his symptoms; and (6) Plaintiff essentially has no work history, even for years before he claims to be disabled. Tr. 24-27. Plaintiff contends that the ALJ failed to provide clear and convincing reasons to discount his testimony, as required in the Ninth Circuit.[3] *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

Plaintiff notes, accurately, the ALJ's first reason cannot solely support his assessment of Plaintiff's testimony. Dkt. 18 at 3 (citing Social Security Ruling 16-3p). Accordingly, the Court turns to consider Plaintiff's challenges to the remaining reasons.

---

[3] Plaintiff's briefing refers to the ALJ's assessment of his allegations as a "consistency/credibility determination." *See, e.g.*, Dkt. 14 at 11-16. Effective March 28, 2016, the Social Security Administration eliminated the term "credibility" from its policy and clarified the evaluation of a claimant's subjective symptoms is not an examination of character. *See* SSR 16-3p. The regulations applicable to this case require an ALJ to discuss the consistency of medical opinions with the record, as discussed *supra*, but do not require a consistency finding with respect to Plaintiff's allegations. The term "consistency/credibility determination" is not grounded in either Ninth Circuit jurisprudence or the regulations, and is not used in this order.

ORDER REVERSING AND REMANDING - 7

Plaintiff contends the ALJ erred in relying on his activities to discount his testimony, because his normal strength upon examination does not equate to daily activities relevant to his ability to work. Dkt. 18 at 3-4. The ALJ did not characterize Plaintiff's normal strength as reflecting his daily activities, however. The ALJ cited Plaintiff's normal examination findings as evidence that his "physical exams do not corroborate his allegations of extreme physical difficulties." Tr. 25. This part of the decision thus pertains to the ALJ's first reason, which, as indicated *supra*, cannot solely support the ALJ's discounting of Plaintiff's allegations.

Plaintiff also challenges the ALJ's finding he received conservative treatment, arguing that no doctors recommended more aggressive treatment, and thus Plaintiff's course of treatment does not undermine his allegations. Dkt. 14 at 13-14. The ALJ cited records noting that Plaintiff had not tried epidural steroid injections, but Plaintiff's provider was merely summarizing his treatment rather than recommending that he try injections. Tr. 26 (citing Tr. 616). The Court agrees with Plaintiff that a treatment note indicating that he did not have injections does not undermine Plaintiff's allegations. *See Lapierre-Gutt v. Astrue*, 382 Fed. Appx. 662, 664 (9th Cir. Jun. 9, 2010) ("A claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist.").

However, other evidence related to Plaintiff's course of treatment cited by the ALJ does undermine Plaintiff's allegations. The ALJ noted Plaintiff's physical therapist told his doctor that he did "not seem invested in improvement at his [physical therapy] sessions." Tr. 502. Plaintiff's provider instructed him to continue with physical therapy until he improves or until he "is clearly not improving." *Id*. Plaintiff was also referred to a neurosurgeon, who recommended that he continue to attempt non-surgical treatment and instructed Plaintiff to seek a physiatry referral from his primary care physician. *See* Tr. 619. When Plaintiff spoke to his primary care

physician about a physiatry referral, he acknowledged that he would have to travel to reach a physiatrist and he did not think his pain was "bad enough" to justify that, and that he was "functional." Tr. 483. His primary care provider reiterated the best way to help his back pain would be to lose weight, and he offered a dietary consult, which Plaintiff declined.[4] *Id*. At this appointment, Plaintiff rated his pain 0 on a 0-10 scale. Tr. 482. The ALJ reasonably found this evidence of Plaintiff's course of treatment undermined his allegation of disabling pain. *See* Tr. 26.

Plaintiff next challenges the ALJ's finding that his mental symptoms improved with treatment, noting his medications have been increased and even if he was described as "stable," such an indication does not imply he has no limitations. Dkt. 14 at 14-15. Plaintiff fails to grapple with all of the ALJ's findings regarding his improvement with treatment, however. The ALJ noted Plaintiff reported significant improvement with mental health medications and that he denied depressive symptoms at times. Tr. 27. The ALJ also found Plaintiff's symptoms flared after the death of his mother and during conflicts with his father, and he stated that one of his goals for therapy was to obtain disability benefits. *Id*. Plaintiff has not shown increases in medication during the adjudicated period contradict any of the ALJ's findings, or the increased medication did not improve his symptoms. The ALJ found that this evidence, coupled with many normal mental status examination findings, undermined Plaintiff's allegation of disabling mental limitations, and Plaintiff has not established harmful error in this finding.

---

[4] Although Plaintiff contends that he is following his doctor's advice to lose weight, he does not cite any evidence demonstrating compliance. Dkt. 18 at 5 (citing Tr. 40, 479, 483). His medical records indicate he weighs 196 pounds, and at the hearing he testified that he weighs around 195 pounds. *Compare* Tr. 40 *with* Tr. 493.

Lastly, Plaintiff argues that the ALJ erred in contrasting his reported social deficits with his primarily online social activities because the ALJ failed to identify a meaningful inconsistency. Dkt. 14 at 15-16. This argument is persuasive but fails to establish harmful error in the ALJ's assessment of Plaintiff's testimony, given the other independent, valid reasons discussed herein, as well as unchallenged reasoning (*e.g.*, Plaintiff's scant work history for years before alleging disability). *See Carmickle,* 533 F.3d at 1162-63. Because Plaintiff has failed to show harmful error in the ALJ's assessment of his testimony, the Court declines to disturb this portion of the ALJ's decision.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED,** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand the ALJ shall reassess the agency medical opinions regarding Plaintiff's mental limitations, develop the record and redetermine RFC as needed, and proceed to the remaining steps of the five-step disability determination process as appropriate.

DATED this 23rd day of June, 2022.

BRIAN A. TSUCHIDA
United States Magistrate Judge